

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

November 20, 1974

The Honorable George N. Rodriguez, Jr.      Opinion No. H- 454
County Attorney
El Paso County                              Re: May a county grant revenue
Room 201, City-County Bldg.                 sharing funds to a hospital
El Paso, Texas 79901                        district to use in various
                                            public health services and
                                            activities.

Dear Mr. Rodriguez:

You have asked our opinion as to whether El Paso County can
legally grant a portion of its federal revenue sharing funds to the El
Paso County Hospital District for the establishment, maintenance and
support of such non-hospital activities as mental health services,
mental retardation services, public health units and clinics and related
public health activities. You note that the Hospital District has been
created as provided by law (Article 9, Section 4, Tex. Const.; V.T.C.S.,
art. 4494-n) and that the County and the Hospital District have identical
boundaries. The Hospital District has requested of the County a share
of its federal revenue sharing funds for use in various health programs
which would benefit the public.

Your request specifically raises the issue of whether article 9,
section 13 of the Texas Constitution empowers a municipality, county,
or any other political subdivision receiving federal revenue sharing
funds within the hospital district to expend such funds for public health
purposes within and through the district contrary to previous interpre-
tation of article 9, section 9, Texas Constitution by Attorney General Opinion
H-367 (1974).

In H-367 we considered the questions posed by Willacy County
which in fact are very similar to those you have asked. There, in
answering whether the County could provide a portion of its federal

p. 2088

revenue sharing funds for a non-profit clinic's low-income maternity care project and for the County Hospital District, we construed article 9, section 9 of the Texas Constitution to be the sole controlling constitutional authority.   We noted that such Article provides in part:

> . . . that any [hospital] district so created shall assume full responsibility for providing medical and hospital care for its needy inhabitants . . . [and] that after its creation no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations for hospital  purposes or for providing medical care within the boundaries of the district . . . .

Additionally, we pointed out in that opinion the restrictions and duties imposed on the District by the legislation creating it (Section 18 of Acts 1971, 62nd Leg., ch. 323, p. 1270) which prohibits expenditures for other hospital facilities through additional taxes or bonds of other political subdivisions located within District boundaries, and establishes in the District "full responsibility  for providing hospital care for the indigents residing within the district. "  (Emphasis added) On this basis and in line with Attorney General Opinions M-870 (1971) and C-646 (1966) we concluded:

> Where, as here, a county and a hospital district have identical boundaries, we believe this grant of authority to the hospital district coupled with the prohibition of any use of county tax or bond revenues for hospital or medical care purposes operates to withdraw the county's general medical care powers . . . . A use of revenue sharing funds for the support of the clinic technically would not fall within the prohibition of use of county tax or bond money, but if a county has no power to provide these services it may not spend any money it might have, from whatever source obtained, for that purpose . . . .
> (Emphasis added)

However, we are of the opinion that in this situation as well
as the situation presented in H-367, article 9, section 13 must be
considered in conjunction with article 9, section 9 to determine the
complete constitutional authority applicable.  Section 13 provides:

>Sec. 13  Notwithstanding any other section of this
article, the Legislature in providing for the creation,
establishment, maintenance and operation of a hospi-
tal district, shall not be required to provide that
such district shall assume full responsibility for the
establishment, maintenance, support, or operation
of mental health services or mental retardation services
including the operation of any community mental
health centers, community mental retardation centers
or community mental health and mental retardation cen-
ters which may exist or be thereafter established within
the boundaries of such district, nor shall the Legis-
lature be required to provide that such district shall
assume full responsibility of public health department
units and clinics and related public health activities
or services, and the Legislature shall not be required
to restrict the power of any municipality or political
subdivision to levy taxes or issue bonds or other
obligations or to expend public moneys for the
establishment, maintenance, support, or operation
of mental health services, mental retardation
services, public health units or clinics or related
public health activities or services or the operation
of such community mental health or mental retarda-
tion centers within the boundaries of the hospital
districts; and unless a statute creating a hospital
district shall expressly prohibit participation by any
entity other than the hospital district in the establish-
ment, maintenance, or support of mental health services,
mental retardation services, public health units or
clinics or related public health activities within or
partly within the boundaries of any hospital district, any
municipality or any other political subdivision or state-
supported entity within the hospital district may partici-
pate in the establishment, maintenance, and support of
mental health services, mental retardation services,
public health units and clinics and related public health
activities and may levy taxes, issue bonds or other obli-
gations, and expend public moneys for such purposes as
provided by law.   p. 2090

When proposed as an amendment to article 9, section 13 was intended " ... to permit municipalities, other political subdivisions, and state supported entities located within hospital districts to participate in the establishment, maintenance, support, or operation of mental health services or mental retardation services or public health services." Acts 1967, 60th Leg., H.J.R No. 37, p. 2990. It was seemingly a reaction to Attorney General Opinion C-646 (1966) and situations similar to that presented there. We believe it is the test provided by section 13 that must be applied to a hospital district in order to determine what medically related powers are left by the Legislature in the respective political subdivisions after the creation of a hospital district.

According to article 9, section 13 " . . . unless a statute creating a hospital district shall expressly prohibit participation by any entity other than the hospital district in the establishment, maintenance, or support of mental health services, mental retardation services, public health units or clinics or related public health activities within or partly within the boundaries of any hospital district . ... " a county such as El Paso on its own or through contract with a hospital district or other entity can provide funds for such activities as those mentioned above.

Section 13 of article 4494n which prescribes the medical and hospital care assumed by the El Paso Hospital District states its "full responsibility" to provide for the needy and indigent of the District. However, nowhere in article 4494n, under which the El Paso Hospital District was formed, do we find an express prohibition of the type activity that is the subject of your request and specified by article 9, section 13.

Thus, a county's federal revenue sharing funds may be used to contract with a hospital district or other entity or by the county itself for the specific public health activities described in article 9, section 13 when the district's enacting legislation has not expressly prohibited it. See, Attorney General Opinion M-261 (1968).

Attorney General Opinions H-367, C-646 and M-870 are therefore overruled to the extent they conflict.

While your request has been stated in the terms of a grant of public funds, we believe the proper procedure would be by contract between the county and the hospital district or other entity. See, e.g., Interlocal Cooperation Act, V. T. C. S., art. 4413 (32c); Attorney General Opinions H-127 (1974), H-109 (1973), M-1154 (1972).

## SUMMARY

El Paso County can legally use a portion of its federal revenue sharing funds to contract with the El Paso Hospital District for establishment, maintenance and support of mental health services, mental retardation services, public health units and clinics and related public health activities under article 9, section 13 of the Texas Constitution.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee

lg